IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: <br><br> Universal Doors and Windows Manufacture, Inc. <br><br> Debtor | Case No. 15-01120 (ESL) <br><br> Chapter 11 |

**MOTION FOR CONTEMPT OF COURT
AND OPPOSITION TO DEBTOR'S URGENT MOTION
[DOCKET No. 200]**

**TO THE HONORABLE COURT:**

**COMES NOW** Ángel Serrano, his wife Mrs. Maritza Soto, and the conjugal partnership constituted by them (collectively "Claimants"), unsecured creditors in the above caption case, through the undersigned legal counselor, who very respectfully state, pray, and request:

I.  **PRELIMINARY STATEMENT**

1.1  The appearing creditors hereby oppose to the "Debtor's Urgent Motion Requesting Extension of Time, until April 22, 2016 to Comply with Court's Order DKT 187" (the "Urgent Motion") filed on April 13, 2016. [Docket No. 200], and request that this Honorable Court denies the Debtor's motion for extension of time; and finds the Debtor in contempt of this Court's orders to produce the documents.

1.2  Since the documents were requested back in December 2015, the Debtor has employed dilatory tactics to increase the legal costs of Mr. Angel Serrano and his wife; tactics used to discourage creditors from defending their rights in the Debtor's estate. Due to these dilatory tactics the appearing creditors have had to incur in legal fees and costs, which continue to augment due to the Debtor's lack of good faith, contumaciousness.

1

1.3     Thus, Mr. Serrano and his spouse respectfully request that this Honorable Court, in accordance with Bankr. Rule 9020, finds the Debtor in civil contempt of Court and imposes monetary sanctions against the Debtor, and to coerce it into compliance and to impose on such reasonable attorney's fees in favor of Mr. Serrano and his wife, Mrs. Maritza Soto.

II.     **RELEVANT CASE BACKGROUND**

2.1     On December 29, 2015, Claimants submitted to the Debtor a "Notice of Request for Production of Documents [Docket No. 156-1], and requested that the Debtor produce certain documental evidence regarding its financial affairs and dealings with its insiders. As it can be further seen by Docket No. 156-1, most of the documents that were requested are documents which the Debtor uses (or should be using) in the ordinary course of this chapter 11 proceeding (*e.g.* cash flow statement, expenses reports, lease agreements, rent roll, etc.).

2.2     During the thirty days' time period to produce the documents the Debtor did not present any objection to such, nor were the documents produced. Thus, the appearing creditor, though the undersigned legal counselors, attempted to contact the Debtor's legal counselor via email on two separate occasions, but no response was received [Docket No. 156-1].

2.3     In view that the Debtor maintained a lackadaisical attitude towards Mr. Serrano's request for production of documents, and that all off-court efforts were ignored, a Motion to Compel was filed in which Mr. Serrano moved the Court to enter an order compelling the Debtor to produce the documents, and an amount no less than $1,000.00 pursuant to Rule 37 of the Fed. R. Civ. P. [Dockets No. 156 ]. This request was granted by this Honorable Court. [Docket No. 157].

2.4     Two (2) business days after the Motion to Compel was granted the Debtor's legal counselor, Mr. Winston Vidal, filed a motion to withdraw from legal representation of the Debtor and requested that the Debtor be permitted 30 days to obtain new legal representation. [Docket No. 159].

2.5     On March 1, 2016, after there was already an outstanding order to compel the production of documents, the Debtor's legal counselor contacted the undersigned stating that: "[i]n complying with Court Order Debtor is gathering the production of documents requested. As soon as I have them they will be made available to you." [Exhibit 1]. Thus, since March 1, 2016, the Debtor has been in the process of gathering the documents; nevertheless, to this date, a month a half later, the documents have not been produced.

2.6     Later on, after the Debtor claimed to be gathering the documents, on March 11, 2016, the Debtor attempted to collaterally attack the order compelling the documents by filing a Motion for Reconsideration [Docket No. 182]. This collateral attack on the Order to Compel was dully address by the appearing party [Docket No. 184]; and on March 16, 2016, the Court determined that "the order entered on February 19, 2016 (dkt. #157), granting the creditors' request for production of documents (dkt. #156) stands. Thus, the debtor **shall produce** the documents within (21) days. Order due by 4/06/2016." [Docket No. 187] [Emphasis was added].

2.7     Despite the deadline established by the Court, on April 1, 2016, the Debtor's attorney emailed the undersigned claiming that the documents will not be produced until Debtor's new legal counselor reviewed the documents and requested a seven days extension of time. [*See* Docket No. 200-1]. Initially the appearing party did not agree; yet,

3

in order to avoid further litigation that would increase Mr. Serrano's legal costs, Mr. Serrano agreed to an extension of time until April 13, 2016.

2.8 On April 13, 2016, the Debtor did not produce the documents (which were requested back in December 29, 2015), but rather filed an urgent motion requesting an extension of time until April 22, 2016. [Docket No. 200].

2.9 To this day the Debtor has failed to comply with this Court's order, it has failed to abide by the most basic principles of bankruptcy, and has forced Mr. Serrano and his wife to incur in legal fees to request information that the Debtor is obligated to produce.

### III. OPPOSITION TO URGENT MOTION

3.1 It is the appearing creditor's position that PR-LBR 9013-1 urgent motions are not to be used casually to request extensions of time, unless there is a specific and pressing urgency. Urgent motion are only to be used when an emergency arises which requires an expedited handling of the Court. Given this expedited treatment the non-moving party must immediately respond, and is not awarded the fourteen days' time period to respond or object.

3.2 In this case, by filing this extension of time as an "urgent motion" the Debtor has burden the undersigned by having to set aside other matters and promptly address the "urgent motion" when there is no urgency, as none was pleaded. This misuse of the "urgent motion" mechanism should not be allowed as its wastes this Court's valuable time and but also burdens the non-moving party.

3.3 That being said, Mr. Serrano and his wife oppose to the requested extension of time as there is no cause for such delay in the production of documents when the Debtor itself, through its counselor admitted that they already have the documents. As it can be

4

seen by Docket No. 200-1, the Debtor's current legal counsel informed the undersigned that the documents were ready, but they have not been produced because the attorney has not been able to analyze them. The Debtor's counselor stated:

> "Dear sister counsel Fullana: during a telephone conversation with Debtor's accountant (Mr. Monge Robertin) I was advised that his staff by mistake provided to your office some instructions to access the production of documents related to previous court orders. **Unfortunately I have not been able to review said production. Therefore I requested CPA Monge that no documents be delivered until I have the opportunity to review said production**" [See Docket No. 200-1, emphasis was added]

3.4  As it can be seen from the email conversation, the Debtor has the documents and it's in a position to produce them; yet the Debtor refuses. This does not comply with PR-LBR 9013-1 inasmuch the "urgency" is self-inflicted. The Debtor has had over three months to produce the documents. If, however, the Debtor waited till the peak of tax season to consult its accountant, that delay is also attributable to the Debtor, and Debtor's new legal counselor has had 28 days to review the documents. In other words, the Debtor has had more than enough time to produce the documents.

3.5  Moreover, the Debtor already requested an extension of time of 15 days to review and analyze the documents. Even though the Court did not allow the Debtor to object to the production of documents, the Court did grant the Debtor an extension of time of 21 days.

3.6  As it can be seen in the docket report, the Debtor filed a motion for reconsideration contesting the order to compel the production of documents. The aforesaid motion stated:

> "**WHEREFORE**, the Debtor very respectfully requests that this Court reconsiders DKT 164 and enter an Order granting 15 days after the approval of the employment of Robles-Diaz as the Debtor's counsel, **so that new counsel can review the requests of production of documents and**

5

**comply with the court's order** and/or present those legal arguments and defenses in relation to said production." [Docket No. 182, page 7, emphasis was added].

3.7 After a timely opposition filed by the undersigned, the Court held:

"The Motion filed by Debtor requesting Reconsideration of docket #164 pursuant to FBR 9023 and/or 9024 (Docket No. 182) is granted to the extent that the order entered on February 29, 2016 (dkt. #164) is a limitation to debtors' right to a new counsel. However, the order entered on February 19, 2016 (dkt. #157), granting the creditors' request for production of documents (dkt. #156) stands. Thus, **the debtor shall produce the documents within (21) days**. Order due by 4/06/2016. [Docket No. 187].

3.8 The Court already granted **more days that the ones initially requested by the Debtor**; and the Court did not grant the Debtor additional time to **review**, object, or filter which documents are to be produced. The Court's order was clear, unambiguous, and more than reasonable, thus, a further extension of time just to review documents is a direct violation of this Court's order.

3.9 If the requested extension of time is granted Mr. Serrano and Mrs. Maritza Soto will be greatly burden as they will not have enough time to conduct further discovery, if needed, in time for the deadline to file an objection to the Amended Disclosure Statement (which is five weeks from now, on May 23, 2016). Consequently, Mr. Serrano and his wife, respectfully request that this Honorable Court denies the requested extension of time and find the Debtor in contempt of court.

### IV. MOTION FOR CIVIL CONTEMPT OF COURT

4.1 The United States Supreme Court has held that court orders must be obeyed, even if the order is later found to be improper or unconstitutional; until the order is vacated or amended pursuant to the proper judicial process. <u>Maness v. Meyers</u>, 419 U.S. 449, 458-459 (1975). Thus, federal courts possess the authority to hold a party in

contempt for failure to comply with a court's order. Shillitani v. United States, 384 U.S. 364, 370 (1966); see also Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 77 (1st Cir. 2002).

4.2     Even though bankruptcy courts are not Article III judges, "[i]t is well-settled law that bankruptcy courts are vested with contempt power. Bankruptcy rule 9020(b) [*now Rule 9020*] specifically provides that a bankruptcy court may issue an order of contempt if proper notice of the procedures are given." Eck v. Dodge Chem. Co. (In re: Power Recovery Sys.), 950 F.2d 798, 802 (1st Cir. 1991).

4.3     The First Circuit Court of Appeals has established a four requirement test that must be met to hold a party in civil contempt of court: (1) the contemnor must have had notice of the court order; (2) the order must have been "clear, definite, and unambiguous"; (3) the contemnor must have had the ability to comply with the order; and (4) the contemnor must have violated the order. Top Entertainment Inc. v. Torrejon, 2002 U.S. Dist. LEXIS 57331 (D.P.R. 2008); see also United States v. Saccoccia, 433 F.3d 19, 26 (1st Cir. 2005). Additionally, "willfulness **is not** a necessary element of civil contempt." *Id.* at fn. 2. *See also* McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949). [Emphasis was added].

4.4     As for the first requirement, in the present case there is no doubt that the Debtor received proper notification of the Compel Order, the certificate of service entered by the Clerk shows that Debtor's counselor was duly notified [Docket No. 157]; and the Debtor itself acknowledges this notice in its Urgent Motion.

4.5     Secondly, there is also no doubt that the order was clear as to its terms, as the Debtor has not impeached or contested its terms. In fact, the Debtor's legal counselor

7

acknowledges that the Court provided twenty one (21) days to fulfill the productions of documents. All the same, the documents have not been produced.

4.6 As for the third and fourth requirements, the Debtor has had the ability to comply all along, yet it has failed to abide by this Court's orders. As a matter of fact, the Debtor himself admitted that the documents are ready but will not be produced because its attorney has not yet reviewed the documents, and "needs" two (2) weeks after the Court imposed deadline to review them. The fact that now the Debtor wants its attorney to review the documents before they are produced does not constitute cause for disobeying this Court's Compel Order inasmuch as "[t]he law is firmly established in this circuit that good faith **is not** a defense to civil contempt." Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 76 (1st Cir. 2002); Star Fin. Servs., Inc. v. AA Mortgage Corp., 89 F.3d 5, 13 (1st Cir. 1996). [Emphasis was added].

4.7 The "Notice of Production of Documents" was duly notified on December 29, 2015. [*See* Docket No. 156-1]. The Debtor and its attorney had 30 days to review the documents and object to any of the required documents; **yet they did not**. Later on, an order compelling them to produce the documents was entered on February 19, 2016, and since then, almost two months after, the documents have not been reviewed by Debtor's counselor.

4.8 Moreover, let us not forget that most of the documents requested are documents which the Debtor is supposed to produce within the ordinary course of the bankruptcy proceeding; and the Debtor has not even partially complied with those documents. Thus, there is absolutely no reason why the Debtor has taken so long to produce such information.

8

4.9     For example, the appearing creditor requested that the Debtor produced the all lease agreements of its property within the last two (2) years, **which is the only income produced from property of the Debtor**. The Debtor, however, has not even produced the lease agreements listed in "Schedule G" [Docket No. 22, page 20].

4.10    Furthermore, it was also requested from the Debtor to produce evidence of any and all payments disbursed in connection with the management of the Debtor's sole income producing property [Docket No. 156-1]. According to the U.S. Department of Justice Chapter 11 Quarterly Fees Guidelines, this information is used to calculate and determine the total quarterly fees of the Debtor.[1] If the Debtor or its appointed professionals have not reviewed these documents, how has the Debtor been calculating its quarterly fees for the past year? It is concerning that no one knows how these fees are being calculated.

4.11    It is even more concerning that the Debtor's only source of income (rental of its property) has not been disclosed by the Debtor *sua sponte*, and that it has failed to produce them even after an order to compel was entered. According to the "Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees" of Region 21 of the U.S. Trustee, the Debtor has the obligation to report a rent roll of its property. The Operating Guideless plainly state:

> Debtors who own commercial or residential rental property shall provide the United States Trustee with a rent roll as of the petition date within 14 days from the filing of the petition. The rent roll shall consist of (1) a description of each property owned, (2) **rental price** of each unit, (3)

---

[1] The Guidelines state: "The quarterly fee is calculated by totaling the debtor's disbursements as reported on the Monthly Operating Reports for the three-month calendar quarter, according to the following chart. The quarterly fee amount will be estimated if disbursements for all of the months of a calendar quarter that the case is open have not been reported to the United States Trustee. The estimated fee is based on, a) reported disbursement history, b) initial financial data submitted when the case was filed, or c) an estimation done by the United States Trustee office. If you calculated the fee to be less than the estimated quarterly fee, you must submit the reports supporting your estimation to the United States Trustee."

security or other deposits held, (4) name of tenant, occupancy and **payment status of each unit**, (5) name, address, and phone number of the management company, if any, and (6) **the monthly management fee for each unit**. **The debtor shall also provide any agreement with a third party to manage the property**. [Emphasis was added].

4.12   In the present case the Debtor's sole source of income is rental income from its property. Nevertheless, the Debtor without leave has failed to abide by the reporting requirements of the U.S. Trustee's Office, and has disobeyed this Court's order compelling it to produce such information.  As it has been repeatedly stated in this motion and other documents, the Debtor's financial affairs are being controlled by an insider of the Debtor's outside of the supervision of the Bankruptcy Court, the U.S. Trustee's Office, and creditors. The appearing creditor has a right to that information, and should not have to go through this daunting (and expensive) litigation ordeal just to receive information that the Debtor has had the obligation to produce since it filed for bankruptcy over a year ago.

4.13   Alas, the Debtor meets all of the four requirements for civil contempt, as established by the Court of Appeals for the First Circuit; and has not established any cause for which it has failed to comply with this Court's orders. Thus, Mr. Serrano and his spouse respectfully requests this Court finds the Debtor in civil contempt of Court.

## V.   REQUEST FOR MONERARY SANCTIONS

5.1   "Sanctions in a civil contempt proceeding are employed to coerce the defendant into compliance with the court's order or, where appropriate, to compensate the harmed party for losses sustained. These sanctions are not punitive, but purely remedial." Eck v. Dodge Chem. Co. (In re: Power Recovery Sys.), 950 F.2d 798, 802 (1st Cir. 1991).

5.2   In civil contempt proceedings, such as this one, "[w]here the purpose of a monetary sanction is to make the defendant comply, the court has wide discretion in

10

considering the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about compliance and the like." *Id.*

5.3 In the present case, the magnitude of the Debtor's contumacy has forced the appearing creditors to incur in over $2,500.00 addressing the Debtor's dilatory tactics (not including the legal expenses incurred in the current contempt proceeding). It is only fair and equitable that Mr. Serrano and Mrs. Maritza Soto, be compensated for the monetary burden they have had to endure in order to obtain discoverable information from the Debtor.

5.4 It is further requested that this Court imposes on the Debtor enters any further sanctions to coerce the Debtor to produce the documents. The requested information is vital in order for any creditor to determine the adequacy of the information contained in the Amended Disclosure Statement, and the deadline to object such is coming up soon, on May 23, 2016. Consequently, the appearing creditor **needs** the requested information.

5.5 Hence, it is requested that this Honorable Court imposes on the Debtor an amount no less than $3,000.00 in favor of Mr. Angel Serrano and his wife, and any other sanction that this Court deems proper to coerce the Debtor to fulfill the Order to compel the production of documents.

**WHEREFORE**, the appearing creditor requests that this Honorable Court entertains the present motion and that, in consequence, denies the Debtors Urgent Motion for extension of time [Docket No. 200] as (1) it does not meet the legal requirements under LBR 9013-1, and (2) the Debtor has had ample time to produce the requested documents. Mr. Serrano and his wife further requests that this Court finds the

11

Debtor in contempt of a court order and award compensatory damages in an amount no less than $3,500.00, and any other remedy the Court deems fair and equitable.

**WE HEREBY CERTIFY**, that on this same date I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system, which will send electronic notification to all participants, including: Debtor's legal representation, the U.S. Trustee's Office, and any other party that has requested electronic notice. Additionally copy of this motion shall be served, pursuant to Rule 9014(b), by U.S. First Class Mail to Debtor, the Debtor's legal counselor, and to the Office of the U.S. Trustee.

**RESPECTFULLY SUBMITED,**

In San Juan, Puerto Rico, this 15th day of April, 2016.

**GARCÍA-ARREGUI & FULLANA PSC**
252 Ponce de León Ave. Suite 1101
Citibank Towers
San Juan, Puerto Rico 00918
Telephone: (787) 766-2530
Facsimile: (787) 756-7800
E-mail: ifullana@garciaarreguifullanalaw.com
ecapdevila@garciaarreguifullanalaw.com

/s/Isabel M. Fullana
Isabel M. Fullana
USDCPR No. 126802

/s/Eduardo J. Capdevila
Eduardo J. Capdevila
USDCPR No. 302713

*Attorneys for Ángel Serrano and Maritza Soto*